We'll now hear argument on the next case that's on the calendar. That is Florence versus Seggos. This one is via video, so you guys can certainly keep your masks off. Let me just make sure everybody can see and hear us. I can see each of you, but Mr. Tuttle, can you hear and see the panel? I can, your honor. Good, and we can hear you loud and clear, and Ms. Clark, we can see you. Let's see if we can hear you. I can hear you. Great, okay, and we can hear you, and can you see us? Yes, I can see you as well. Great, okay, so Mr. Tuttle, you've got 10 minutes total, but you reserve two minutes for rebuttal, so that gives you eight minutes now. You may proceed. Thank you, your honor. May it please the court, James Tuttle on behalf of the plaintiffs, Florence and Michael Seggos. This is a Rule 12 case about pleading sufficiency, and the claim is that the plaintiffs suffered adverse employment determinations on the basis of race. I think we all agree that the controlling case is vega, and the case is cited therein, which tells us that in order to claim, the complaint must set forth the claims efficiently, nudge them from conceivable to plausible, and those same cases tell us that in considering this question, it's appropriate to remember that men may easily conceal their motivations, and that in employment discrimination claims, there is rarely a smoking gun documenting intentional discrimination. Well, here you're saying there is a smoking gun, right? Yeah, I think there is a smoking gun, but the court below did not, and that's why we're here. The court below found that we were lacking sufficiently specific allegations that the position for which the plaintiffs were competing, and to which Mr. Rivers was ultimately appointed, was not, they were not the same position. We take issue with that. I'll get to that in a moment. And the second grounds for his refusal to allow the proposed Second Amendment complaint was that it did not specifically enough allege the qualifications of the plaintiffs, and it didn't allege that they were equal to or superior to the qualifications of the appointed person, Mr. Rivers, or the position. What are the allegations that the plaintiffs were as or more qualified than Mr. Rivers that are in the proposed Second Amendment complaint? Those are at paragraphs, well, we're not going to get to specific paragraphs. The first is the test results. A civil service test is very precisely a test to determine the taker's qualifications and background for the position, ability to put the position in a proper manner. The plaintiffs and Mr. Rivers all took that same test. Plaintiffs scored very well on that test. They were the two highest scores, and Mr. Rivers didn't know why. Why were the test results still relevant, given that the job changed? Your Honor, I respect, the job did not change. What happened was Mr. Schneider, who was the Director of Law Enforcement, announced he was going to be retiring. The civil service test had already been taken by all of the applicants. Judge Chin is saying, if it's not, I was thinking the same thing, if it's not exempt, if it's a non-exempt position, it could be that the employee could say, because this is now a non-exempt position, we're not going to consider the test results anymore. They could say that, right? Yes, they could say that, but I'm saying they still have... What the declassification brought about was it removed the passing grade on the test as a requirement for the position. It didn't remove it as a consideration. How do you know that? How do you know whether or not they still believed the test was a consideration after they made it non-exempt? Because as soon as Mr. Schneider retired, they immediately appointed Mr. Rivers provisionally to the position, and then six months later, approximately, they appointed him permanently to the position. What does that have to do with the test, though? I don't understand. How does that tell you whether or not they considered the test to still be a factor in assessing qualifications? Well, I would also add, Your Honor, that allegations in the complaint, which are all deemed to be true, are that it was the same position. If in discovery, it turns out that DEC, in fact, changed those positions, those qualifications, that may be relevant on a summary judgment basis, but at this point, the allegations of the complaint are that it was the same position. So I think we all have to assume that that is true. I thought your argument was that they basically changed the position or the qualifications required for the position in order to advance race-based considerations. Is that what you're saying? No, what they did was declassify the position, thereby removing successful test results as a requirement for the position, which was the first step they had to take in order to impose what they had in mind all along, we allege, which was the appointment of their minority candidate who had failed that test. They couldn't possibly appoint him. They couldn't legally appoint him until they got rid of the test. So they got rid of the test. Then, having got rid of the test, they appointed him. But nevertheless, those test results didn't go away. They didn't evaporate. They still stood. What other allegations are there in the second amended complaint to show that the two plaintiffs were more qualified? So you started off with the test process. The other factors are outranked. They were both majors in the department and Captain Rivers was one rank below as a captain. We also pointed out in the complaint that both plaintiffs had more significant and job-specific assignments than Major Captain Rivers, who was operating an internal position. And we also point out that during the period of his interim provisional appointment, his job performance was not adequate. His attendance was very poor. Is that still relevant to the the hiring decision is when Rivers is appointed provisionally, right? No, the provisional assignment was not what we're complaining about. We're complaining about the permanent assignment, which took place in November, six months later. When did they apply? I mean, when Rivers was appointed permanently, did they apply at that point? Were they in the room? I think one of them had retired already, right? No, no, he retired. He got so mad about the permanent appointment of Mr. Rivers, he couldn't work for the agency anymore. That's when he retired. Did they apply at that point? They were, yes, they were considered applicants all the way along. Whether the civil service test was a, well, let me start a little differently. One of the reasons that we don't know much about the reason that the defendant submitted to the Civil Service Commission, because we got our FOIA requests, responses there too, were very heavily redacted, but we do know that the two things they told the Civil Service Commission with regard to why we want you to classify this position is to increase the field of applicants and for purposes of diversity. I understand that. I was just trying to figure out when, was there a decision made when Mr. Rivers was permanently appointed that the agency was not going to hire one of the two plaintiffs? Or it's usually there's an adverse decision and I mean, did they continue to express an interest in the job? What is there in the complaint about those kinds of things? Yes, as the complaint alleges, they didn't know anything about the declassification process. That all happened under wraps. They didn't even know about it after it happened for approximately a month when a staff member stumbled on it accidentally looking through... And they didn't repost the position either, right? They did not repost the position, Your Honor. They didn't interview anybody else. That is correct. That's alleged in the complaint. And until Mr. Rivers was permanently appointed, my two plaintiffs were candidates for that position. And we submit they've been denied their rights under Title VII. I'm running out of time here, but I'd like to address briefly the argument in the defense counsel's brief that I had the opportunity to reply to their arguments attacking the proposed Second Amendment complaint. That's not correct. Under Local Rules 7.1c and Local Rule 12 of the Northern District, cross motions do not get reply papers. They are prohibited. So I would submit that that argument is not valid. So if we think the pleading is sufficient as it is, the Court disagrees and there's something else that needs to be pled there to sustain this cause of action, then we would ask at least that the matter be remanded for the opportunity to amend the pleading. All right. Thank you. You've reserved two minutes for rebuttal, Mr. Tuttle. We'll now hear from Ms. Clark for 10 minutes. Good morning, Your Honors. Jennifer Clark on behalf of Appellees. This Court should affirm the District Court's decision to deny plaintiffs' motion to file a Second Amendment complaint. Because plaintiffs' proposed amendments would be futile, their complaint would still fail to state the claim upon which relief could be granted. Plaintiffs' core allegation seems to be that defendants failed to properly comply with New York civil service law. They claim that... I'm just going to summarize what Mr. Tuttle outlined, that based upon the fact that they were higher ranked, they had operational units that Mr. Rivers did not. They scored high on the exam. He failed it. They then took the exam, made it non-exempt, put Mr. Rivers in the position. Don't post it after they make it non-exempt. Don't interview anybody else. And they further alleged that Mr. Rivers didn't do a good job when he was in the acting role, and that all of that is enough for them to get across the motion to dismiss pleading standard. So what's your response to that? My response to that is that... I left out one thing. I left out one thing. They also that in making it non-exempt, the direction was this is for diversity purposes. So what's your answer to that? Well, Your Honor, just to clarify about that, they do not allege that that was the reason. They allege that that was a lie, that that was a false reason given. So I just want to be clear about what that allegation is. In paragraph 28, they say that documents approving the change in status of non-competitive, the Civil Service Commission reminded the DEC that it should use approval to further minority promotions. Yes, Your Honor, and plaintiff's argument is that DEC was not being truthful when it said that that was its reason. That's a core element of their argument, is that that was a false reason given by DEC. And to respond to the rest of what... Okay, put that aside. I don't want to get sidetracked on that. Why aren't the other allegations enough to state a plausible claim in inference that this was based upon Mr. Rivers' race and that they were more qualified for the position? Your Honor, because all of the things that Your Honor mentioned are not race-based. They are questions about who was more or less qualified, including a test that was no longer relevant once the position had been re-classified. How do we know it was no longer relevant? I mean, as I was suggesting, Mr. Tuttle, it could have been or it could not have been. We don't really know at this stage. We know that they did much better, but even though it was a non-exempt position, certainly the test could have still been a relevant consideration, right? Well, Your Honor, sure. It could be one of multiple things, but I just want to be clear about what happened when the re-classification was sought and then thereafter granted. And plaintiffs are not challenging the re-classification decision itself. They aren't saying that it was improper to re-classify this as a non-competitive position. So even seeking that... When you consider all the factual allegations that Judge Bianco just reviewed, is it not plausible that the agency wanted to hire a diverse candidate over two white men? So, Your Honors, I do not believe... Is that not a plausible claim? Plaintiffs' pleadings have not made that plausible claim as to their Title VII or Constitutional claims. Now, if Your Honors believe that it is the proper choice to send this back for re-pleading as to the Title VII claim, I would nevertheless encourage that it would not be the right decision to send this back for further pleading as to the Constitutional claim. Because even in their briefing before this Court, plaintiffs failed to allege that occurred here. So even if Your Honors believe that plaintiff's complaint with some kind of amendment could plausibly state a Title VII claim, it could not plausibly state a Constitutional claim. They have to use the words, but for cause? If they don't use the words, but for cause, that it's improper? No, Your Honor. No, Your Honor. It's not about something like semantics like that. It's about the actual allegations in their complaint. And the allegations in their complaint indicate that the plaintiff, yes, was a black man and... Doesn't the complaint plausibly allege that but for their race, one or one of the plaintiffs would have been hired? No, Your Honor. That's not a plausible claim? No, it does not, Your Honor. It says repeatedly in their complaint, they say, and in their briefing before this Court, they say that race was one of multiple reasons. They note that that what was in the documents that were transmitted from DEC to the Civil Service Commission and what came back. So that in and of itself indicates that it was not fought for. And in addition to the concerns about... I'm sorry, can I interrupt? So what are the other reasons? That, well, according to plaintiff's complaint, it says that they simply preferred him, their handpicked candidate, over the other people that were there. And the other reasons were that... According to the complaint? I don't know. According to the complaint, they preferred him because of his race. Your Honor, I don't think that that's what plaintiffs have pled. They have said repeatedly that they simply preferred Mr. Rivers and wanted him to be put in the position and therefore they falsely told the Civil Service Commission that they wanted to declassify the position for a number of reasons, including one of the reasons being to have a diverse pool of applicants, among other reasons. And... But for cause is not the only requirement for a constitutional allegation to be sufficiently pled. In addition, it must also sufficiently allege impersonal involvement by the defendants here. And that, it says, plaintiffs have failed to do. Obviously, the 1983 claim cannot be depleted. So, as to the individual defendants, Defendant Rivers, plaintiffs failed to allege that he played any part in the decision-making process for the promotion whatsoever. The only time he appears in the Second Amendment complaint is simply as someone who applied and was given the acting position. The other defendant, Defendant Valentine, the only time his personal involvement is alleged is when he announced that Rivers would serve as acting director. As to Defendant Sagos, plaintiffs allege only that he was present at the second round interviews for the position. And finally, the fourth individual defendant, Defendant Agnew's name appears nowhere in the complaint, except for where she is listed as a defendant. So, the complete failure to allege personal involvement as to the 1983 individual liability claims is enough to demonstrate that plaintiff's constitutional allegations have not been plausibly pledged. The same is true for the due process claim, which I will address next. There's no due process property interest at stake here that's been identified. Plaintiffs have no legitimate claim of entitlement to the position. And then, with regards to plaintiffs' response in their reply brief that they should have, that an Article 78 would not have been an appropriate process here, the cases that plaintiffs cite are instances where the court determined that an Article 78 proceeding was insufficient process because some kind of predetermination process was required. There's no such allegation here, nor could such an allegation be supported because it has been found that post-deprivation process would be sufficient here. Can I just go back to your personal involvement issue? I understand your point there, but why couldn't they potentially correct that if they got a chance to replead? Assuming we disagree with you on the but-for-cause issue, whether or not that was pledged sufficiently or not, why couldn't they put additional allegations to try to demonstrate how one or more, put Mr. Rivers aside, but how one or more of these supervisors may have been personally involved in the decision? Well, Your Honors, defendants didn't even propose any amendments to this court or to the district court that they could have made such that their constitutional claims could be bailed, nor do defendants even allege in their briefing before this court that raises the but-for-cause. So, if any such amendments exist, defendants have had multiple opportunities to argue that they should have been given that opportunity, and they have to do so even before this court now. And I would further note with regards to the opportunity to file a third amending complaint, you know, that was not something that plaintiffs asked for below, and should plaintiffs have desired to respond, then they could have sought leave from the court to do so, and they did, you know, they did fail to do that. So, there was the opportunity to amend for an additional time, and plaintiffs failed to attempt that. Thank you, Your Honors. All right, thank you, Ms. Clark. We'll now hear from Mr. Tuttle for two minutes of rebuttal. Yes, thank you, Your Honor. The, we, what about the personal involvement? I mean, I'm not sure why Mr. Rivers is named as a defendant. Did the commissioner of the Department of Environmental Conservation have a role in this? Yes, he did. That's why he was named as a defendant. You don't, you don't make a lot of, Ms. Agnew is not even mentioned, other than who the defendants are. How can you possibly allege enough for her personal involvement? We need to, we can address that on a replete, Your Honor, if necessary. We certainly have. Well, do you have other allegations to add on that? Yes, we have other allegations to add with all of those things. I'd also like to point out that the initial motion addressed to this pleading, the only, the only objection raised was that we hadn't named the state as a respondent, and only a state can be, only a municipality can be a respondent. You have, you have additional allegations that Mr. Rivers himself was involved in the decision to hire Mr. Rivers? He, our allegation, it's pretty unusual, it's pretty unusual to sue the person who got the position as, under Section 1983, under equal protection, right? Our allegation is that he participated with all of the other named defendants and an unnamed defendant from Governor Cuomo's office to bring about this violation of my client's rights. How do you have a due process claim if, how is there a property right? What cases said that you have a property right in the position that you're applying for that you can bring a due process claim? I, we didn't have a property right in the position. We had a, I believe we had a property right in the lawful application of the civil service laws of the state of New York. Well, you're not, you're not alleging they violated that procedurally, they didn't do anything procedurally improper. You're saying that motivation was bad, but you're not alleging they didn't proper, follow the proper procedure for making it non-exempt, right? That's, that's correct, Your Honor. So who's left on the Title VII claim? I guess I'm trying to figure that out. Who are the defendants that you would be naming on the Title VII claim? The state of New York is in the department are the defendants on the Title VII claim. Okay, so that's, you, you're acknowledging no, no individual defendants, right? No, that's not correct. I believe the individual defendants are there on the 1983 claim. Okay, I'm talking about just the Title VII. The Title VII, they're all there. They were sued initially in their official capacity, which I understand to be the same as an action against the state, but rather than litigate, decided to amend to include the state as a defendant. All right. Seeing no further, seeing no further questions, we will reserve decision. Thank you. What's that? If I have just another moment, or maybe I'm out of time. I think you're out of time. If, if it's 20 seconds you need, I'll give you that. I'd just like to bring the Rickey case to the court's attention. We're told that any failure to use a civil service list for reasons based on race constitutes a violation of Title VII. I think that's almost exactly what we have here. The Rickey case and this case are almost indistinguishable on their, on their facts, and I discourage the court to consider that. Thank you all very much. All right. Thank you both. We will reserve decision, as I said.